UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:21-CR-109 |
| | ) | |
| vs. | ) | |
| | ) | |
| RICCO SAINE, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Ricco Saine's Motion to Suppress Evidence Seized in Motel Room Search [Doc. 79] seeking the suppression of certain evidence obtained during a search conducted on October 18, 2021. The United States filed a Response in opposition to Defendant's Motion [Doc. 89]. The Court then conducted an evidentiary hearing on the motion on October 6, 2022. Defendant Ricco Saine ("Mr. Saine"), Mr. Saine's counsel Timothy W. Hudson, Esq., Defendant Tonya Saine ("Ms. Saine"), Ms. Saine's counsel Jessica C. McAfee, Esq., and Assistant United States Attorneys B. Todd Martin, Esq. and M. Blake Watson, Esq. were present before the Court. Kaylea Campbell and Kingsport Police Department Officer Jesse Altman testified at the hearing. This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation. For the reasons stated herein, the undersigned **RECOMMENDS** that the Motion to Suppress [Doc. 79] be **DENIED**.

I.     BACKGROUND

On October 13, 2021, a federal grand jury returned an indictment against Mr. Saine, charging him with violating 18 U.S.C. § 922(g)(1) by knowingly possessing a firearm, namely a

Ruger LCP9, 9mm semiautomatic pistol, while being aware that he was prohibited from doing so because he is a convicted felon. On April 12, 2022, a federal grand jury returned a superseding indictment adding counts against Ms. Saine and charging Mr. Saine with additional counts of violating 21 U.S.C. §§ 841(a)(1), (b)(1)(A) by knowingly possessing with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers and 18 U.S.C. §§ 922(g)(1) and 924(e) by knowingly possessing firearms that were transported in interstate commerce, namely a Springfield Armory, model Saint, 5.56 caliber rifle and a Walther, model PK380, .380 caliber pistol. On July 13, 2022, a federal grand jury returned a second superseding indictment charging Mr. Saine with possession of a Ruger EC9S rather than a Ruger LCP9. On October 12, 2022, a federal grand jury returned a third superseding indictment which did not alter the charges brought against Mr. Saine but added allegations that he had incurred convictions for multiple aggravated robberies and an aggravated burglary prior to possessing the firearms at issue.

In his Motion, Mr. Saine argues that the search of his hotel room at the Comfort Inn in Kingsport, Tennessee on October 18, 2021, was unreasonable under the Fourth Amendment, because police conducted the search without a warrant and based on the consent of a third-party without actual or apparent authority to provide consent. [Doc. 79]. He further contends that any evidence obtained as a result should be suppressed. *Id.* In response, the United States avers that the third-party had both actual and apparent authority to consent to a search of the hotel room, but additionally states that even if the actions taken by law enforcement constituted a violation of the Fourth Amendment, the contents of the room would have inevitably been discovered. [Doc. 89, p. 3]. The United States contends that the Court should not exclude the evidence obtained. *Id.*

## II. FINDINGS OF FACT

### a. *Kaylea Campbell's Testimony*

Kaylea Campbell testified first in the evidentiary hearing. She advised that she met Ricco Saine in 2021 at a hotel in Kingsport, Tennessee and the two began a romantic relationship while Mr. Saine was married to Ms. Saine. Ms. Campbell and Mr. Saine began living together in the room at the Comfort Inn where the search at issue occurred and had been sharing the room for several weeks at the time of the search. The room was booked in Mr. Saine's name, but Ms. Campbell stated that she paid for the room once and had a key. Ms. Campbell further testified that she kept all her belongings in the room, her belongings were interspersed with Mr. Saine's throughout the room, and their belongings were piled in certain areas. Some of their items were placed around the room together while some items were separate, but all items were accessible to both Mr. Saine and Ms. Campbell. Ms. Campbell also advised that she and Mr. Saine shared one bed, and she typically left the room only to run errands for Mr. Saine.

On October 18, 2021, Ms. Campbell stated that she was in the room when the hotel manager knocked on the door. When Ms. Campbell opened the door, she saw that the manager was accompanied by law enforcement. She could not recall if officers asked to enter the room, but she testified that she allowed them to enter. At first, officers questioned Ms. Campbell while she was sitting on the bed she and Mr. Saine typically shared. The room contained two beds with a table in between them, and Ms. Campbell stated that the bed on which she was sitting was the one furthest from the front door. Then, officers asked if they could search the room, and Ms. Campbell said "yes" and signed a written consent form. Ms. Campbell testified that the officers did not explain why they wanted to search the room, nor did they tell her which items they intended to search. Ultimately, they searched the entire room, including Ms. Campbell and Mr. Saine's

belongings. During a forty-five minute to hour-long search, officers searched Ms. Campbell's purse and makeup bag, finding drugs and paraphernalia. Ms. Campbell was then arrested on an active warrant. She returned to the Comfort Inn after being released, attempting to retrieve her belongings, but the room had already been cleaned out.

      b. *Officer Altman's Testimony*

Officer Jesse Altman testified second at the hearing. He advised that he began working at a jail before attending the police academy. He began working in the Kingsport Police Department Vice Narcotics Unit in January 2021 and began investigating Mr. Saine for narcotics trafficking after joining the Unit. During the investigation of Mr. Saine, Officer Altman observed Mr. Saine at the Comfort Inn in Kingsport. While attempting to serve an arrest warrant, Officer Altman would position himself in the parking lot of the Comfort Inn to look for Mr. Saine and any familiar cars. Officer Altman observed Mr. Saine leaving and returning to the hotel with an unidentified woman on multiple occasions. On October 18, 2021, Officer Altman and another agent saw a vehicle in which they had previously observed Mr. Saine and his female parked at the inn. The officers approached the front desk clerk to ask which room was occupied by Mr. Saine. The clerk was able to identify Mr. Saine and Ms. Campbell by name and showed the officers Mr. Saine's occupant agreement. That agreement indicated that the room was booked in Mr. Saine's name but reflected that there were two adult occupants of the room. A copy of the agreement was admitted as Exhibit 1.

The clerk then took the officers to the room registered to Mr. Saine. At that time, Mr. Saine was already in custody, so the officers knew he would not be in the room. Nevertheless, the clerk knocked on the door, and Ms. Campbell opened it. At that time, Officer Altman says that he and his fellow officer asked Ms. Campbell if they could speak with her privately inside the room, and

she responded affirmatively. Officer Altman testified that they questioned Ms. Campbell inside the room for fifteen to twenty minutes before asking to search the room. Ms. Campbell consented to the search verbally and in writing. On cross-examination, Officer Altman was asked to address the fact that the consent form states only that Ms. Campbell consented to a search of "my property identified as Room 331." A copy of the consent form was admitted as Exhibit 2. Attorney Hudson asserted that because Room 331 and a portion of its content were not Ms. Campbell's property, she could not consent to a search of it. Officer Altman explained that he knew the room was only registered in Mr. Saine's name, but that two occupants were listed on the occupancy agreement, and Officer Altman had observed Ms. Campbell leaving and entering the hotel previously.

Officer Altman further testified about the search of the room. He stated that items were spread out all over the room, some in containers and bags, but none in distinct piles. There was some clear distinction between male and female clothes, but many of the clothes were laying together on the second bed. Additionally, it was unclear who some of the items and bags belonged to, and Ms. Campbell did not identify which items belonged to her versus Mr. Saine. Officer Altman's testimony demonstrated that the room was in a rather unkempt condition, with belongings being piled up in certain parts of it. Officers first found a makeup bag under a pillow on the bed next to where Ms. Campbell was sitting. That bag contained a plastic bag of what appeared to be methamphetamine and a syringe. A picture of the bag and its contents was admitted as Exhibit 3. Next, officers found another makeup bag with a syringe inside. Officer Altman testified that he did not remember where the bag was found but believes it was in the table between the two beds. A picture of this bag and its contents was admitted as Exhibit 4. After completing the search, officers arrested Ms. Campbell on an active warrant. They returned to the hotel later after receiving a call from hotel staff that a sock containing what appeared to contain narcotics had

been found while staff were cleaning out the room. Mr. Saine now seeks to suppress evidence of the methamphetamine and paraphernalia in addition to heroin and telephones found in the room. [Doc. 79].

III. ANALYSIS

    a. Consent

Mr. Saine asks the Court to find that the search of the hotel room was conducted without consent in violation of his Fourth Amendment rights. To determine whether Mr. Saine's position has merit, the Court must assess whether Ms. Campbell had actual or apparent authority to consent to a search of the room.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons…against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures in private areas are presumptively unreasonable unless an exception to the warrant requirement applies. *Payton v. New York*, 445 U.S. 573, 586-88 (1980). A warrantless search is valid if someone with authority consented to the search, even over the objection of an "absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170 (1974). On a motion to suppress evidence resulting from a search pursuant to third-party consent, the state has the burden of proving the third-party's authority. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). To have authority to consent to a search, a person must have more than a mere property interest. *Matlock*, 415 U.S. at 171, fn 7. Authority to consent comes from "mutual use of the property by persons generally having joint access or control for most purposes." *Id*; *United States v. Sheckles*, 996 F.3d 330, 348-49 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 717 (2021) (finding that a girlfriend had actual authority to consent to the search of her boyfriend's storage unit where she had a key, stored her clothes in it, and was listed on his rental agreement as having

a right of access). Further, a warrantless search is still valid based on a third-party's consent if the third-party did not in fact have authority over the premises, but the police reasonably believed the third-party had authority. *Rodriguez*, 497 U.S. at 188-89. Courts consider the reasonableness of an officer's belief under the totality of the circumstances, and no single fact is determinative. *United States v. Rogers*, 861 F. App'x 8, 20 (6th Cir. 2021), *cert. denied sub nom. Ford v. United States*, 142 S. Ct. 1422 (2022); *United States v. Hudson*, 405 F.3d 425, 442-43 (6th Cir. 2005).

The consent doctrine applies to hotel rooms as well as other types of property. "Under the Fourth Amendment, an occupant of a hotel room has a reasonable expectation of privacy there, even though he is just a guest, not an owner, of the room." *United States v. Caldwell*, 518 F.3d 426, 429 (6th Cir. 2008). Thus, a warrantless search of a hotel room is unreasonable unless an exception applies. *Id.* When one occupant of a hotel room consents to a search and another does not, the question is whether the consenting occupant had actual or apparent authority. *Id.* The Sixth Circuit has found actual authority to exist when an occupant was a registered guest, placed his or her belongings in the room, spent time in the room, and intended to stay there overnight. *Id.* at 429; *see also United States v. Eastman*, 645 F. App'x 476, 480 (6th Cir. 2016) (finding that "Kellogg had, at a minimum, mutual use of the hotel room sufficient to consent to its search. She paid for the room with her debit card, spent time there earlier in the day, and planned to return in the evening, perhaps to spend the night"); *United States v. Purcell*, 526 F.3d 953, 965 (6th Cir. 2008) (Sutton, J., concurring in part and dissenting in part) (observing that "Crist, to start, had unquestioned authority over the hotel room: She rented the room in her name; she opened the door to the officers; and her personal effects were in the room.").

Both parties cite to *U.S. v. Purcell* in their briefs when discussing apparent authority. In *Purcell*, a woman, Yolande Crist, consented to the search of a hotel room that she had been staying

in with her boyfriend, Defendant Frederick Purcell. 526 F.3d at 957. Purcell was arrested prior to the search, but Crist allowed officers to search the room and items in it. *Id.* The Court found that Crist did not have apparent authority to consent to a search of a duffel bag containing men's clothing when it likely belonged to Purcell. *Id.* at 965. The Court further found that officers were authorized to search items that unambiguously belonged to Crist, but once ownership of the duffel bag was in question, officers should have inquired further to determine whether Crist could consent to a search of Purcell's bag. *Id.* at 963. At the same time, no one questioned her authority to consent to the search of the room itself, because the room was rented in her name and her personal belongings were in it. *Id.* at 965 (Sutton, J., concurring in part and dissenting in part).

Here, Ms. Campbell had actual and apparent authority to consent to a search of the hotel room. Though Ms. Campbell's name was not on the guest registry, other circumstances collectively lead the Court to conclude that she had authority. Ms. Campbell testified that she had been living in the room with Mr. Saine for several weeks and had everything she owned in it. Further, she had a key and paid for the room on at least one occasion. The evidence introduced clearly demonstrated that Ms. Campbell and Mr. Saine mutually used the room and had joint access and control over it. Given this joint access and use, coupled with the fact that the rental agreement specifically stated that the room had two adult occupants, the Court finds that Ms. Campbell had actual authority to consent to a search of the room. However, even if Ms. Campbell did not have actual authority to consent to a search, it was reasonable for police to believe she had such authority under the circumstances. Officers had observed Ms. Campbell entering and leaving the hotel with Mr. Saine, and when officers arrived at the room listed on Mr. Saine's registration sheet, Ms. Campbell opened the door. Further, she advised officers that she had her belongings there in the room. While Ms. Campbell's name itself was not listed on the occupancy agreement, it was

reasonable for officers to conclude after speaking with Ms. Campbell that she was the second occupant referenced in the agreement.

Ms. Campbell also had authority to consent to the search of items within the room. Unlike in *Purcell*, Ms. Campbell did not consent to a search of items that appeared to clearly belong to Mr. Saine. In fact, the illicit drugs and paraphernalia officers found were contained in what appeared to be a woman's makeup bag. Otherwise, Ms. Campbell and Officer Altman both testified that many of Ms. Campbell and Mr. Saine's belongings were piled together throughout the room. There were no piles, bags, or other containers that were marked as clearly belonging to Mr. Saine alone or that would have reflected that they contained only items that would be used by a male. The Court cannot find that Ms. Campbell lacked the requisite authority to consent to a search of the hotel room she shared with Mr. Saine or the items within it when their belongings were interspersed together throughout the room. Moreover, Mr. Saine does not point to any bag or container which was opened by officers which they should have known belonged solely to him. As such, the search of the hotel room did not violate Mr. Saine's Fourth Amendment rights.

  b. *Inevitable Discovery*

Although the Court has already determined the search was conducted based on adequate consent, the Court will go one step further and address the application of the inevitable discovery rule. The United States avers that even if the search conducted pursuant to Ms. Campbell's consent was invalid, evidence from the hotel room would have been inevitably discovered. When evidence has been obtained unconstitutionally, "the inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (citing *Nix v. Williams*, 467 U.S. 431, 443-44 (1984)). The Court must "determine, 'viewing affairs as they existed at the instant before the unlawful search, what

would have happened had the unlawful search never occurred.'" *United States v. Alexander*, 954 F.3d 910, 916 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 333 (2020) (citing *United States v. Kennedy*, 61 F.3d 494, 498 (6th Cir. 1995)).

Here, Ms. Campbell and Officer Altman testified that Ms. Campbell was arrested on an active warrant and hotel staff cleaned out the room after Ms. Campbell was gone. Even if officers had decided not to search the room looking for evidence in Mr. Saine's case after speaking with Ms. Campbell, she would still have been arrested on the active warrant. From that point, the facts have already demonstrated that hotel staff would have cleaned out the room and, at a minimum, would have found the sock containing what appeared to be illegal substances and called the police. Such evidence would have then provided sufficient probable cause for officers to obtain a warrant to search the remaining belongings from the room. As a result, the Court finds that under the inevitable discovery doctrine, evidence uncovered in Mr. Saine's hotel room would still be admissible.

### IV.  CONCLUSION

The Court concludes that Ms. Campbell had the actual authority to consent to the search of the hotel room at issue and the belongings contained therein, such that the search did not violate Mr. Saine's rights under the Fourth Amendment. Moreover, the Court finds that even if Ms. Campbell did not have actual authority that officers were justified in concluding that she had that authority. Finally, the Court concludes that even if the search itself violated Mr. Saine's rights under the Fourth Amendment, the evidence should not be suppressed because it would have been

Case 2:21-cr-00109-JRG-CRW   Document 110   Filed 10/27/22   Page 10 of 11
PageID #: 348

inevitably discovered. For these reasons as more fully outlined above, the undersigned **RECOMMENDS** that Mr. Saine's Motion to Suppress [Doc. 79] be **DENIED**.[1]

                                                            Respectfully Submitted,

                                                            /s Cynthia Richardson Wyrick
                                                            United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).