UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:21-CR-109 |
| | ) | |
| vs. | ) | |
| | ) | |
| RICCO SAINE, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Ricco Saine's Motion to Suppress Oral Statements to Law Enforcement [Doc. 27] seeking the suppression of certain statements made to law enforcement on or about September 15, 2021. The United States filed a Response in opposition to Defendant's Motion [Doc. 73]. The Court held a hearing on multiple pending motions in this case on October 6, 2022. Defendant,[1] Defendant's counsel Timothy W. Hudson, Esq., Defendant Tonya Saine, Ms. Saine's counsel Jessica C. McAfee, Esq., and Assistant United States Attorneys B. Todd Martin, Esq. and M. Blake Watson, Esq. were present before the Court. This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation. For the reasons stated herein, the undersigned **RECOMMENDS** that the Motion to Suppress [Doc. 79] be **DENIED** in part and **GRANTED**[2] in part as specifically addressed below.

---

[1] Given that this motion addresses only Defendant Ricco Saine, he will be referred to simply as "Defendant" and Defendant Tonya Saine will be referred to as Ms. Saine for clarity.

[2] The Court had originally advised the parties that it would address the admissibility of Defendant's statements under the Federal Rules of Evidence; however, given the number of individual statements made by Defendant and the fact that the United States has not yet advised which of those it intends to seek to introduce against him, the Court has determined that judicial economy compels that the ruling not be made until the United

I. BACKGROUND

On October 13, 2021, a federal grand jury returned an indictment against Defendant, charging him with violating 18 U.S.C. § 922(g)(1) by knowingly possessing a firearm, namely a Ruger LCP9, 9mm semiautomatic pistol, while being aware that he was prohibited from doing so because he is a convicted felon. On April 12, 2022, a federal grand jury returned a superseding indictment adding counts against Ms. Saine and charging Defendant with additional counts of violating 21 U.S.C. §§ 841(a)(1), (b)(1)(A) by knowingly possessing with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers and 18 U.S.C. §§ 922(g)(1) and 924(e) by knowingly possessing firearms that were transported in interstate commerce, namely a Springfield Armory, model Saint, 5.56 caliber rifle and a Walther, model PK380, .380 caliber pistol. On July 13, 2022, a federal grand jury returned a second superseding indictment charging Mr. Saine with possession of a Ruger EC9S rather than a Ruger LCP9. On October 12, 2022, a federal grand jury returned a third superseding indictment which did not alter the charges brought against Defendant but added allegations that he had incurred convictions for multiple aggravated robberies and an aggravated burglary prior to possessing the firearms at issue.

In his Motion, Defendant argues that statements he made to law enforcement were made in violation of his Fifth and Sixth Amendment rights as expressed in *Miranda v. Arizona*, 384 U.S. 436 (1966). [Doc. 27, p. 1]. Defendant asserts that he was not fully advised of his *Miranda* warnings prior to a conversation with law enforcement, and even if he was warned and waived his rights, such a waiver was not knowingly, voluntarily, and intelligently made. [Doc. 27, p. 2]. In the alternative, he contends that the statements are inadmissible under the Federal Rules of

---

States has provided that notice. At that time, should Defendant believe that certain of the statements he made are inadmissible under the Federal Rules of Evidence, he may file a motion stating which statements are purportedly inadmissible and provide the specific legal basis for that contention.

Evidence. [Doc. 27, p. 2-3]. For these reasons, Defendant argues his statements should be suppressed. *Id.* In response, the United States avers that Defendant's statements were voluntary and not subject to *Miranda*, but additionally states that even if Defendant's statements were subject to *Miranda*, he waived his right to remain silent. [Doc. 73, p. 1]. The United States contends that the Court should not exclude the evidence obtained. *Id.*

II.     **FINDINGS OF FACT**

The parties agreed that the Court could rule based solely upon its viewing of the recording made of Defendant's statement to officers while in custody [Doc. 73-1], and the arguments counsel made in their written filings. The recording of Defendant's statement depicts Task Force Officer Mike Slater ("Officer Slater") and Detective Jessie Altman ("Detective Altman")[3] initially bringing Defendant into the room. Officer Slater then introduces himself and Detective Altman to Defendant and tells him they want to ask him some questions. Officer Slater then asks Defendant if he is willing to answer some questions. While Defendant first responds in the negative, he then, without taking a breath, launches into a roughly four-and-a-half-minute long statement without being asked a single question. In fact, the officers could not have, as the saying goes, gotten a word in edgewise during Defendant's initial voluntary utterance. Of note, while Defendant was making this voluntary statement, he talked about the gun and drugs officers had found in his truck, his membership in the Vice Lords gang, and his lengthy prison stay. Additionally, he threatened to sue members of law enforcement for civil rights violations.

---

[3] Officer Slater is an investigator with the Kingsport Police Department as well as a Task Force Officer assigned to the Bureau of Alcohol, Tobacco Firearms and Explosives. Detective Altman works solely for the Kingsport Police Department.

While most of Defendant's statements to officers were unquestionably voluntary utterances not subject to exclusion under *Miranda*, officers did ask Defendant two questions. One was a question regarding the ownership of the gun found in his truck and the other was regarding his rank in the Vice Lords gang. While Defendant had discussed both topics during his statement, he was not discussing either topic immediately prior to being questioned about them.

### III. ANALYSIS

Defendant first argues that he was not properly advised of his *Miranda* rights at the beginning of his interrogation [Doc. 27, p. 1]. In response, the United States argues that *Miranda* warnings were not even required because no custodial interrogation took place. [Doc. 73, p. 1]. *Miranda* warnings must be given before an individual is subjected to custodial interrogation. *United States v. Malcolm*, 435 F. App'x 417, 420 (6th Cir. 2011) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). "The Supreme Court has defined 'custodial interrogation' as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Here, it is undisputed that Mr. Saine was in custody during his conversation with law enforcement. As such, the relevant inquiry to determine whether *Miranda* warnings were required is whether the conversation was an "interrogation." An interrogation is any word or action that police should have known was reasonably likely to elicit an incriminating response, under an objective standard. *Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980). "It is well settled that statements volunteered by a defendant while in custody are not implicated by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." *U.S. v. Gossett,* 600 F. App'x. 330, 335 (6th Cir. 2015).

Here, at the time Defendant made his four-and-a-half-minute long statement, Officer Slater had merely introduced himself and Detective Altman to Defendant and said that they would like to ask him questions. Defendant was not asked a single question other than whether he was willing to talk to officers prior to speaking for four-and-a-half minutes. The officers could not have known that merely advising Defendant that they would like to ask him questions would lead Defendant to spend the next four-and-a-half minutes incriminating himself.

The only potential admissibility issue involves Defendant's responses to the two questions officers asked him regarding ownership of the gun found in his truck and his rank in the Vice Lords gang. While Defendant discussed both topics during his four-and-a-half minute long voluntary utterance, at the time he was asked each "follow-up question" a discussion of neither topic immediately preceded the question about it. "The line between impermissible interrogation and permissible follow-up questions to volunteered statements is a fine one." *Tolliver v. Sheets,* 594 F.3d 900, 920 (6th Cir. 2010). While police are permitted to sit back and listen while a defendant makes a voluntary statement without interrupting to give a *Miranda* warning and may even ask a follow-up question to clarify something said in that statement, an officer may not cross the line into "express questioning or the functional equivalent[.]" *Id.* (quoting *Rhode Island v. Innis,* 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). In assessing whether a question is merely a follow-up seeking clarification or one that would constitute interrogation, emphasis is placed on the timing of the question in relation to when a defendant made the statement for which clarification was purportedly sought. *See Tolliver*, 594 F.3d at 920-21 ("Police may even interrupt a volunteered statement to ask clarifying or follow-up questions…The difference between permissible follow-up questions and impermissible interrogation clearly turns on whether the

police are seeking clarification of something that the suspect just said, or whether instead the police are seeking to expand the interview.")

The Court will first address the question about Defendant's rank in the Vice Lords. This question was not asked within a reasonable proximity to Defendant's statements regarding his involvement in the Vice Lords. Moreover, Defendant did not refer to his rank in the Vice Lords when speaking about his involvement. Defendant disclosing his rank in the organization did nothing to clarify the statements he had made earlier. As such, the Court must conclude that the question posed to Defendant about his rank was designed to impermissibly elicit incriminating information from Defendant rather than simply to obtain clarification of a statement Defendant had just made, making his response to the question inadmissible against him. *Tolliver,* 594 F.3d at 922.

As to the question regarding the ownership of the gun found in Defendant's truck, that question presents a different inquiry. While Defendant was not addressing the ownership of the gun immediately prior to being asked a question regarding the topic, he was asked the question immediately after he concluded his four-and-a-half-minute uninterrupted utterance. For that reason, the Court finds the timing of the question alone would not compel suppression. The Court must then consider what Defendant had said regarding ownership. Defendant had stated during his voluntary utterance that the gun belonged to his wife and that she had left it in the truck. Given that Defendant had already stated that his wife owned the gun, for Detective Altman to ask him a question about the ownership thereafter appears not to have been for the purpose of seeking "clarification" about the ownership but instead with the hope of obtaining a different answer as to who owned it.

## IV. CONCLUSION

The Court concludes that Defendant's statements to law enforcement were voluntary and not subject to *Miranda,* with the exception of his responses to questions posed to him regarding his rank in the Vice Lords and the ownership of the gun found in his truck. The Court finds that those two questions posed by Detective Altman and Officer Slater constituted custodial interrogation when Defendant had not yet been advised of his *Miranda* rights meaning that his responses to those questions should be suppressed. For this reason, as more fully outlined above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 27] be **DENIED** in part and **GRANTED** in part as set forth above.[4]

Respectfully Submitted,

/s Cynthia Richardson Wyrick
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).