UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:21-CR-109 |
| | ) | |
| vs. | ) | |
| | ) | |
| RICCO SAINE, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

Before the Court is Defendant Ricco Saine's Motion to Suppress the Fruits of an Unconstitutional Search [Doc. 30] seeking the suppression of certain evidence obtained during a vehicle search conducted on or about August 27, 2021. The United States filed a Response in opposition to Defendant's Motion [Doc. 82]. The Court then conducted an evidentiary hearing on the motion on October 6, 2022. Defendant, his counsel Timothy W. Hudson, Esq., Defendant Tonya Saine ("Ms. Saine")[1], Ms. Saine's counsel Jessica C. McAfee, Esq., and Assistant United States Attorneys B. Todd Martin, Esq. and M. Blake Watson, Esq. were present before the Court. Kingsport Police Department Officer Aaron Blevins and K9 Officer Travis Bates testified at the hearing. This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation. For the reasons stated herein, the undersigned **RECOMMENDS** that the Motion to Suppress [Doc. 30] be **DENIED**.

---

[1] Given that the motion at issue relates only to Defendant Ricco Saine, the Court will refer to him as Defendant and to his wife/co-defendant Tonya Saine as Ms. Saine for clarity of the record.

## I. BACKGROUND

On October 13, 2021, a federal grand jury returned an indictment against Defendant, charging him with violating 18 U.S.C. § 922(g)(1) by knowingly possessing a firearm, namely a Ruger LCP9, 9mm semiautomatic pistol, while being aware that he was prohibited from doing so because he is a convicted felon. On April 12, 2022, a federal grand jury returned a superseding indictment adding counts against Ms. Saine and charging Defendant with additional counts of violating 21 U.S.C. §§ 841(a)(1), (b)(1)(A) by knowingly possessing with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers and 18 U.S.C. §§ 922(g)(1) and 924(e) by knowingly possessing firearms that were transported in interstate commerce, namely a Springfield Armory, model Saint, 5.56 caliber rifle and a Walther, model PK380, .380 caliber pistol. On July 13, 2022, a federal grand jury returned a second superseding indictment charging Defendant with possession of a Ruger EC9S rather than a Ruger LCP9. On October 12, 2022, a federal grand jury returned a third superseding indictment which did not alter the charges brought against Defendant but added allegations that he had incurred convictions for multiple aggravated robberies and an aggravated burglary prior to possessing the firearms at issue.

In his Motion, Defendant argues that the search of his vehicle on August 27, 2021, in the West Side Inn parking lot in Kingsport, Tennessee was unreasonable under the Fourth Amendment because it was conducted without a warrant and based on the alert of a canine which did not arrive on the scene until ten minutes after Defendant was arrested. [Doc. 30, p. 2]. Because he claims the search was unreasonable, he contends that any evidence obtained as a result, which includes marijuana and a firearm, should be suppressed. [Doc. 30, p. 1]. In response, the United States avers that the deployment of a canine after Defendant's arrest was lawful and provided sufficient

probable cause to justify a search of his vehicle. [Doc. 82, p. 8]. The United States contends that the Court should not exclude the evidence obtained. [Doc. 82, p. 9].

## II. FINDINGS OF FACT

### a. Officer Aaron Blevins's Testimony

Officer Aaron Blevins ("Officer Blevins") testified first at the hearing. He advised that he has worked for the Kingsport Police Department for a little over three years as a patrolman. On August 27, 2021, he was on routine patrol around the West Side Inn in Kingsport when he saw Defendant standing outside the motel next to a red Dodge Ram Rebel truck. Officer Blevins testified that he recognized Defendant because he had previously seen him at the West Side Inn and also because he had viewed a photo of him circulated with a "Be On the Lookout" ("BOLO") alert issued by the Church Hill Police Department. The BOLO indicated that Defendant was wanted for narcotics trafficking. Additionally, Officer Blevins noted he had received an email that alerted Kingsport PD officers to a disturbance at the West Side Inn involving a red Ram Rebel. A copy of the BOLO was admitted into evidence as Exhibit 5. A copy of the email was admitted into evidence as Exhibit 6.

Officer Blevins testified that he alerted other officers by radio that he had seen Defendant, and three officers responded. Officer Blevins then placed Defendant under arrest based on a warrant issued earlier in the day based upon a shoplifting charge levied against Defendant. Defendant asked that someone lock his car, so another of the officers on the scene rolled up the drivers' side window of Defendant's truck, locked it, and shut the door. Officer Blevins then called for the K9 unit to come to the scene based on the BOLO indicating Defendant could have narcotics. Officer Blevins further testified that the West Side Inn is a known location for criminal activity, including drug offenses, and Officer Blevins personally witnessed numerous arrests there. Officer

Blevins remembers K9 Officer Travis Bates arriving at the scene in three to four minutes.[2] While Defendant was in handcuffs, Officer Blevins assisted him in calling his wife to come to the West Side Inn to retrieve the truck. Video footage of Defendant and his truck at the time of the arrest was admitted into evidence as Exhibit 7. Officer Blevins was outside the camera's frame, but the video shows both Defendant standing in front of the motel clerk's window beside the truck and an officer locking the truck.

### b. Officer Travis Bates's Testimony

Officer Travis Bates ("Officer Bates") testified next. Officer Bates advised that he works for the Kingsport Police Department as a patrolman and canine handler in the K9 unit. He has been a canine handler since 2020. After attending a police academy in 2016, Officer Bates completed an eight-week basic training with a senior canine handler and completed a certification with his dog. His dog is certified to detect odors of methamphetamine, cocaine, heroin, and marijuana. A copy of the canine certification was admitted into evidence as Exhibit 8.

On August 27, 2021, Officer Bates arrived at the West Side Inn where he guided his canine, Jimmy, on a leash around the relevant vehicle based on Officer Blevins's request. Jimmy is trained to sit at the strongest source of an odor, and in this case, his behavior began to change on the drivers' side of the vehicle before sitting down next to the drivers' side rear door. A copy of Officer Bates's report was admitted into evidence as Exhibit 9. At the evidentiary hearing, the United States played a separate video file from Exhibit 7, which shows Jimmy circling the truck and sitting down at the rear door on the drivers' side. Another officer then found marijuana

---

[2] Defendant's brief states that the K9 unit arrived approximately ten minutes after Defendant's arrest, and the United States has not offered conflicting evidence. The video admitted as Exhibit 7 was submitted in two parts, and it does not show the full length of time between Defendant's arrest and the arrival of the K9 unit. Thus, the Court finds approximately ten minutes passed between Defendant's arrest and the arrival of the K9 unit.

inside the truck but on the passengers' side. On cross-examination, Officer Bates testified that Jimmy is not trained to distinguish between the odors of legal cannabis and illegal marijuana, but that Jimmy alerted to the scent of marijuana, which he was trained to detect.[3] Officer Bates further advised that it is not unusual for a K9 to detect the odor of illegal drugs at a part of the vehicle other than the area immediately adjacent to where the substances are located.

### III. ANALYSIS

Defendant asks the Court to find that the warrantless search of his vehicle was conducted in violation of his Fourth Amendment rights. To determine whether Defendant's position has merit, the Court must assess whether the deployment of the canine after Defendant's arrest was lawful.

The Fourth Amendment provides people with "the right to . . . be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Warrantless searches and seizures in private areas are presumptively unreasonable unless an exception to the warrant requirement applies. *Payton v. New York*, 445 U.S. 573, 586–88 (1980). One such exception is the automobile exception, which allows law enforcement to search a vehicle where the search is supported by probable cause. *United States v. McGhee*, 672 F. Supp. 2d 804, 812 (S.D. Ohio 2009) (citing *Maryland v. Dyson,* 527 U.S. 465, 466–67 (1999); *United States v. Ross,* 456 U.S. 798, 807–09 (1982)). The Supreme Court has routinely acknowledged that the core basis for the automobile exception to the warrant requirement is the inherently mobile character of a vehicle and, more recently, the lesser expectation of privacy in an automobile. *United States v.*

---

[3] The Court allowed defense counsel to submit supplemental research related to the issue of legal cannabis versus illegal marijuana. The Court is not aware of any caselaw finding that a canine's inability to distinguish between legal cannabis and illegal marijuana renders the canine's alert to marijuana untrustworthy, and defense counsel has submitted none.

*Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citing *California v. Carney*, 471 U.S. 386 (1985)). The probable cause determination is judged from the totality of the circumstances at the time of the search. *Id.* at 648 (citing *Smith v. Thornburg*, 136 F.3d 1070, 1074–75 (6th Cir. 1998)). A lawful warrantless vehicle search does not have to occur during a traffic stop, and the Sixth Circuit has upheld such searches while officers were in control of the keys and driver. *Id.* at 650. Defendant repeatedly asserts that rules relating to the automobile exception are inapplicable here, because his car was not searched during a traffic stop. However, the Sixth Circuit's decision in *United States v. Smith* has rendered this argument unavailing. 510 F.3d at 646, 650 (finding probable cause for the search of a vehicle parked outside the defendant's residence and noting that the court had "upheld warrantless automobile searches in which officers were in control of both the keys to the vehicle and the operator of the vehicle").

Defendant acknowledges that his arrest was lawful but argues that the ten minutes between his arrest and the arrival of the K9 unit was an unreasonable extension of the time needed to accomplish his arrest, rendering the vehicle search unconstitutional. So, the question for the Court is whether a ten-minute delay between Defendant's arrest and the arrival of the K9 unit rendered the search unconstitutional. As both parties acknowledge, an officer needs no suspicion or cause to perform a canine sniff of a stopped vehicle during a lawful stop, because the use of a dog for drug detection does not implicate privacy concerns. *See Illinois v. Caballes*, 543 U.S. 405, 408–09 (2005). At the same time, the Sixth Circuit has held that police officers cannot extend routine traffic stops to wait for K9 units to arrive unless they have reasonable suspicion of criminal activity. *United States v. Salas*, 820 F. App'x 405, 412 (6th Cir. 2020) (finding a delayed dog sniff during a traffic stop constitutional when it "arose out of an extensive investigation into an ongoing drug enterprise."). Notably, delays of up to 30 minutes have been found to be constitutional. *See*

*United States v. McAllister*, 31 F. App'x 859, 862, 865 (6th Cir. 2002) (holding that a five to ten-minute wait for a canine after a traffic stop was permissible); *United States v. Ortega–Ramos*, 56 F.3d 65, 1995 WL 314889, at *3 (6th Cir. May 23, 1995) (concluding that a fifteen-minute wait for a canine after an initial vehicle stop was permissible); *United States v. Knox,* 839 F.2d 285, 290 (6th Cir. 1988) (determining that a thirty–minute hold at an airport was permissible).

In this case, the Court finds that the brief delay between Defendant's arrest and arrival of the K9 unit did not render the search of Defendant's vehicle unconstitutional. Officers had reasonable suspicion to believe they would find evidence of criminal activity related to Defendant in the red truck parked outside the West Side Inn. The truck at issue clearly belonged to Defendant-he was standing next to it when Officer Blevins arrived, and the officer observed Defendant shut the driver's side door. Then, after Defendant was arrested, he asked that someone lock the truck and he called his wife to come and pick it up. While Defendant asserts that he was actually "on foot" when officers arrived, the mere fact that he was standing beside his truck as opposed to being seated in it did not render him "on foot." This is particularly true given Defendant's proximity to the truck and the fact that the vehicle was not parked in a parking space but was instead pulled in front of the office window. Moreover, Officer Blevins had reason to believe that Defendant was involved in criminal activity based on the BOLO he had received, indicating that Defendant was connected to narcotics trafficking. Finally, Officer Blevins knew that the West Side Inn was a hotbed for criminal activity and had personally witnessed multiple drug-related arrests there. The totality of the circumstances was sufficient to provide reasonable suspicion that Defendant was connected to drug-related activity and as such, it was likewise reasonable for Officer Blevins to call in the K9 unit, even when it meant a brief extension of Defendant's arrest process.

The Court further finds that two cases from the Sixth Circuit are particularly instructive here. In *U.S. v. Diaz,* 25 F.3d 392 (6th Cir. 1994), drug agents obtained information from a suspected drug courier about the location of defendant's vehicle. Agents found the vehicle in a motel parking lot and a drug detection dog alerted on the vehicle. *Id.* While the defendant consented to the search of his vehicle thereafter because he said he believed he had no choice, he attempted to challenge the constitutionality of the search claiming both that the K9's alert was unreliable and that agents were without authority to enter the motel parking lot to deploy the K9 in the first instance. *Id.* The Court found that the search was constitutional and in doing so, rejected the defendant's contention that he had a reasonable expectation of privacy in his vehicle while it was parked in the motel parking lot, despite him being a paying guest. *Id.* at 396.

The Court's reasoning was more recently confirmed in *U.S. v. Gooch,* 499 F.3d 596 (6th Cir. 2007). There, the Court found that the warrantless search of a vehicle located in a business parking lot was appropriate, again relying upon defendant's lack of a reasonable expectation of privacy as to his vehicle. The defendant in *Gooch* attempted to distinguish his circumstances from those in *Diaz* in part by noting that he had paid to park in a special valet area of the lot. In finding that defendant lacked a reasonable expectation of privacy, the Court noted that access to the parking lot was not controlled by a gate where you needed a code or card to enter and further noted that the parking lot was shared by several commercial businesses. *Id.* at 601–02.

In applying these cases to the one at hand, the Court notes that officers would have been justified in bringing a K9 into the motel parking lot at any time to conduct a free-air sniff of Defendant's vehicle even without reasonable suspicion. As such, the Court must find that even if officers had unreasonably extended Defendant's arrest to deploy the K9 unit, suppression would not be an appropriate remedy as officers were entitled to conduct a free-air sniff of the vehicle with

or without Defendant's presence. Of further note, while Defendant had contacted his wife to retrieve the truck, she had not yet arrived by the time the K9 unit appeared on scene and conducted the search so the truck would still have been accessible to the K9 even if Defendant had already been transported.

The Court next turns to the probable cause issue raised by Defendant. The alert of a drug sniffing dog is sufficient probable cause to search a vehicle if the Court finds reason to trust the dog's alert. *Florida v. Harris*, 568 U.S. 237, 246–47 (2013). The Court can presume that a dog's alert provides probable cause based on "evidence of a dog's satisfactory performance in a certification or training program." *Id.* at 246. Here, Officer Bates testified about K9 Jimmy's certification in detecting multiple drug odors including marijuana, and the United States moved into evidence a copy of the K9's credentials. The defense did not present any evidence challenging K9 Jimmy's certification but instead questioned his ability to distinguish between legal cannabis and illegal marijuana. The Court finds no caselaw holding that the inability to distinguish between cannabis and marijuana renders a canine sniff unreliable, and Defendant has pointed to none. Accordingly, the Court finds that the search of Defendant's vehicle was supported by probable cause and did not violate the Fourth Amendment.

## IV. CONCLUSION

The Court concludes that the search of Defendant's vehicle was supported by probable cause, such that the search did not violate Defendant's rights under the Fourth Amendment. For

this reason, as more fully outlined above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 30] be **DENIED**.[4]

Respectfully Submitted,

/s Cynthia Richardson Wyrick
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).