UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 2:21–CR–109 |
|  | ) |  |
| RICCO SAINE | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Objections to the Presentence Investigation Report ("PSR"). [Doc. 245]. Defendant lodges twenty-seven objections to the PSR. [*Id.*]. The Probation Office timely filed an addendum responsive to Defendant's objections. [Doc. 252]. The Court began Defendant's sentencing hearing on May 13, 2024, but continued the hearing to June 24, 2024, due to Defendant's illness. [Doc. 253]. In the interests of judicial economy due to the substantial number of objections lodged by Defendant, the Court will resolve his objections prior to Defendant's sentencing hearing.

I.   **LEGAL STANDARD**

Pursuant to Federal Rule of Criminal Procedure 32, a district court must rule on disputed portions of the PSR. "[O]nce a defendant calls a PSR dispute to the court's attention, the court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence. Rather, the district court must actually find facts, and it must do so by a preponderance of the evidence." *United States v. Harris*, 552 Fed. App'x 432, 440 (6th Cir. 2014) (internal quotations and citations omitted). The Sixth Circuit requires "literal compliance" with this Rule. *Id.* (citation omitted). "The court may not

blindly accept the PSR, but '[w]hen a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant.'" *United States v. Poulsen*, 655 F.3d 492, 513 (6th Cir. 2011) (quoting *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2001)). "[A] defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. Instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question. If a defendant meets this burden of production, the government must then convince the court that the PSR's facts are actually true. But the defendant gets no free ride: he must produce more than a bare denial, or the judge may rely entirely on the PSR." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (*quoting United States v. Mustread*, 42 F.3d 1097, 1102 (7th Cir. 1994)).

## II. ANALYSIS

### a. Objections Impacting the Guidelines Range

#### i. Whether Defendant's Prior Predicate Offenses for Armed Career Criminal Occurred on Separate Occasions (Objections One, Five, Eight, Eleven, and Twenty-Seven)

Objection One relates to paragraph 6 of the PSR, which sets forth the jury's findings that Defendant's prior convictions for aggravated robbery committed in Shelby County, Tennessee with an offense date of November 9, 1998, aggravated robbery committed in Shelby County, Tennessee with an offense date of November 12, 1998, aggravated robbery committed in Shelby County, Tennessee, with an offense date of November 16, 1998, and aggravated burglary committed in Shelby County, Tennessee, with an offense date of October 30, 1998, (collectively the "Predicate Offenses"), all occurred on separate occasions. Defendant concedes that paragraph 6 "includes an accurate recitation of the jury's special verdict," but "nonetheless objects to said jury's findings[.]" [Doc. 245 at 1].

Similarly, Objection Five to paragraph 43 of the PSR states that "while Mr. Saine admits that he was previously convicted of aggravated robbery (X3), he denies that his prior convictions should be counted separately and a lower base offense level should be applied." [*Id.* at 1–2]. Objections Eight (to paragraph 50 of the PSR) and Eleven (to paragraphs 65–68 of the PSR) similarly deny that Defendant's Predicate Offenses classify him as an Armed Career Criminal. [*Id.* at 2–3]. Defendant argues that he "committed the [predicate] offenses during a singular crime spree and he was convicted of said offenses on the same date." [*Id.* at 2]. He also denies the factual circumstances listed in the PSR for each of his Predicate Offenses "as he was a teenager when the listed offenses occurred and [] does not have great recall from this period of time," but he does not deny his convictions. [*Id.*].

Two offenses are committed on different occasions for purposes of the Armed Career Criminal Act ("ACCA") if: (1) "it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins"; (2) "it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense"; or (3) "the offenses are committed in different residences or business locations." *United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012) (quotations omitted). "Offenses are separate if they meet any of these three tests." *Id.* The Government bears the burden of proof to show that the offenses occurred on separate occasions. *United States v. Barbour*, 750 F.3d 535, 546 (6th Cir. 2014). The Government must do so through so-called "Shepard-approved" documents, which include charging documents from the predicate offenses. *See United States v. King*, 853 F.3d 267, 273, 275 (6th Cir. 2017). This includes "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record

of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). "[T]he relevant factor for determining the number of predicate offenses under the ACCA is not the date of conviction for those predicate offenses, but the date that the defendant committed the offense for which he is subsequently convicted." *United States v. Martin*, 526 F.3d 926, 939 (6th Cir. 2008) (quoting *United States v. Roach*, 958 F.2d 679, 683 (6th Cir. 1992)) (internal quotation marks omitted).

The Government introduced copies of "Shepard-approved" documents for each Predicate Offense during Phase Two of Defendant's trial, and the jury ultimately returned a special verdict finding that the Predicate Offenses were committed on separate occasions. "When sentencing a defendant under the guidelines, the district court 'cannot rely on a finding that directly conflicts with the jury's verdict.'" *United States v. Fletcher*, No. 10-5605, 2011 U.S. App. LEXIS 26575 at *4 (6th Cir. Jan. 13, 2011) (citing *United States v. Cockett*, 330 F.3d 706, 711 (6th Cir. 2003)).

Even if the jury had not explicitly found that Defendant's Predicate Offenses were committed on separate occasions, the Court, based on the record before it, would reach the same conclusion. All four Predicate Offenses occurred on different dates and at different locations. [Doc. 243 at 16–17]. The judgment orders for each of Defendant's Predicate Offenses plainly list offense dates of November 9, 1998, November 12, 1998, November 16, 1998, and October 30, 1998, meaning in each instance Defendant completed one offense before beginning the next several days to over a week later, and Defendant could have easily withdrawn before each subsequent offense. To the extent Defendant contests the underlying facts of each Predicate Conviction as set forth in the PSR due to his lack of recollection, this is little more than a bare denial that fails to provide any evidence that calls the reliability or correctness of the alleged facts into question. It is clear to the Court that Defendant's Predicate Offenses were committed on separate occasions under all three tests, even though satisfaction of one test alone would suffice.

In light of the foregoing, the Court finds that Defendant's Predicate Offenses occurred on occasions separate from one another, and that Defendant is an Armed Career Criminal. Objections One, Five, Eight and Eleven are **OVERRULED**. As an Armed Career Criminal, Defendant is subject to a minimum fifteen-year sentence under the provisions of 18 U.S.C. § 924(e)(1). Accordingly, Defendant's objection related to his mandatory minimum and guidelines range in Objection Twenty-Seven is also **OVERRULED**.

    ii. Calculation of Defendant's Offense Level and Criminal History Category (Objections Two, Three, Four, Six, and Thirteen)

Defendant objects to certain facts which impact his guidelines range as an Armed Career Criminal. The United States Sentencing Guidelines ("USSG") state that the offense level for an Armed Career Criminal is the greatest of USSG §§4B1.4(b)(1) (the offense level applicable from Chapters Two and Three), (b)(2) (Career Offender status), or (b)(3). Subsection 4B1.4(b)(3) states that Defendant's offense level is 34 if Defendant *inter alia* used or possessed the firearm in connection with either a crime of violence or a controlled substance offense, otherwise the offense level is 33. Further, Subsection 4B1.4(c)(2) states that Defendant's criminal history category is VI if Defendant used or possessed the firearm in connection with a crime of violence or a controlled substance offense.

Objection Two concerns paragraphs 10 through 30 of the PSR, which Defendant admits "contain a reasonable recitation of the [G]overnment's proof elicited at trial." [Doc. 245 at 1]. Defendant nonetheless objects to these paragraphs because he maintains his innocence. [*Id.*]. Objection Three to paragraph 32 of the PSR objects to the contents of a written statement made by Kaylea Campbell to the Kingsport Police Department on October 18, 2021. [*Id.*]. Defendant states that "Ms. Campbell is not trustworthy," and he "denies the activities described therein." [*Id.*]. Defendant similarly contests paragraphs 33 to 37 of the PSR in Objection Four because he

"maintains his innocence." [*Id.*]. Defendant objects to paragraph 44 of the PSR in Objection Six, maintaining his innocence while "acknowledg[ing] that the jury found him guilty (and three firearms were involved)[.]" [*Id.* at 2]. Finally, Objection Thirteen to paragraphs 71–72 of the PSR takes issue with the calculation of Defendant's criminal history category as VI because he denies his status as an Armed Career Criminal. [*Id.* at 3].

Several of the factual statements Defendant has objected to based upon claims of innocence are relevant to the Court's determination of Defendant's offense level. For starters, testimony at trial revealed that on August 27, 2021, a dark blue unzipped bag was located in Defendant's truck after his arrest at the West Side Inn in Kingsport, Tennessee, for having an active warrant. [Doc. 243, at 7]. The dark blue bag contained a Ruger EC9S semiautomatic pistol. [*Id.*]. Subsequently, on September 4, 2021, Defendant handled and closely inspected multiple firearms while shopping with his wife and co-defendant Tonya Saine at Smoky Mountain Guns and Ammo. [*Id.* at 9]. The testimony at trial supported that Ms. Saine was conducting a "straw purchase" on behalf of Defendant, who could not legally possess a firearm due to his status as a convicted felon. [*Id.*]. Ultimately, Ms. Saine purchased a Walther model PK .380 caliber pistol and a Springfield Saint 5.56 caliber rifle from Smoky Mountain Guns and Ammo, and Defendant can be seen on surveillance footage carrying the boxed-up Saint rifle out of the store under his arm. [*Id.*]. ATO Task Force Officer Mike Slater testified that on October 19, 2021, while Officer Slater was transporting Defendant to his arraignment in federal court in the present case, Defendant stated that if Officer Slater would vouch for his release then Defendant would tell Ms. Saine to hand his AR-15 rifle over to law enforcement. [*Id.*].

The Court has also reviewed the testimony of Ms. Kaylea Campbell from Defendant's trial. She testified under oath that she met Defendant in early September 2021, and that she and

Defendant started dating in mid-September or October of 2021. During their relationship, she moved in with Defendant at the West Side Inn in Kingsport, Tennessee, after which she saw him with a black firearm. [*Id.* at 10]. She testified that the gun was a black handgun with a red laser and identified the gun as the Walther PK .380 caliber pistol. [*Id.*].

The timeline of Ms. Campbell's trial testimony differs slightly from the PSR's summary of a written statement she provided to the Kingsport Police Department on October 18, 2021, with respect to when she first met Defendant. [*Id.*]. In that statement, Ms. Campbell said she met Defendant mid-August 2021 at the West Side Inn, not September 2021. [*Id.*]. Ms. Campbell's written statement further states that in mid-September 2021, Defendant showed her a bag of methamphetamine and a bag of marijuana and that Defendant sold drugs out of the hotel room they lived in together. [*Id.* at 11]. Ms. Campbell's written statement details that Defendant would "pull the [Walther handgun] on people in their room and threaten to shoot them between the eyes." [*Id.* at 11]. When Defendant was arrested on October 18, 2021, Ms. Campbell's written statement reflects that she had seen Defendant in possession of approximately a quarter of a pound of methamphetamine and a large amount of heroin the morning before his arrest. [*Id.*].

The PSR further details that prior to Defendant's arrest on October 18, 2021, Defendant was stopped by police and a trained K9 conducted a free-air sniff around his vehicle. [*Id.*]. The K9 alerted to the presence of an odor of narcotics, and a search of Defendant's vehicle revealed empty plastic baggies, smoking paraphernalia, a ledger commonly associated with drug trafficking, and a cell phone. [*Id.*]. Ms. Saine took possession of the vehicle after Defendant's arrest and gave law enforcement permission to retrieve the Walther PK .380 caliber pistol from within the vehicle. [*Id.*]. Ms. Saine stated that she purchased the Walther firearm, but she told ATF Special Agent Jamie Jenkins at the scene that Defendant had gone to the other side of the store during her

purchase. [*Id.*]. This assertion is directly contradicted by surveillance video from Smoky Mountain Guns and Ammo taken on September 4, 2021. Ms. Saine also admitted to Special Agent Jenkins that Defendant had handled the pistol once before. [*Id.*]. After Defendant was arrested, law enforcement went to Room 331 of the Comfort Inn in Kingsport, Tennessee, which was registered in Defendant's name. Law enforcement located Ms. Campbell inside the room, and she consented to a search of the premises which revealed 100 grams of methamphetamine, substances believed to be heroin, and drug paraphernalia. [*Id.*].

Defendant has not produced any evidence to contradict any of the above facts, and therefore the Court is entitled to rely on the facts as set forth within the PSR. Although Count Four of the Third Superseding Indictment, which charged Defendant with possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), was voluntarily dismissed by the Government, "criminal activities linked to the crime of conviction which are proved at sentencing by a preponderance of evidence should be punished as 'relevant conduct,' even if such misconduct had been uncharged, or charged in a count of dismissal[.]" *United States v. Conway*, 513 F.3d 640, 643 (6th Cir. 2008) (quoting *United States v. Dunlap*, 209 F.3d 472, 477 n.10 (6th Cir. 2000)).

From the facts within the PSR, the Court can and does find by a preponderance of the evidence that Defendant possessed three firearms: a Ruger EC9S 9mm semiautomatic pistol, a Walther PK .380 caliber pistol, and a Springfield Saint 5.56 caliber rifle. This comports with the jury verdict finding Defendant guilty of both Counts One and Five. [*See* Doc. 226]. Although the verdict form for Count Five allowed the jury to find Defendant guilty if he possessed *either* the Walther pistol or the Springfield Armory rifle, the Court finds by a preponderance of the evidence that Defendant knowingly possessed both firearms. Defendant was in actual possession of the

Springfield Armory rifle when he carried it out from Smoky Mountain Guns and Ammo, and he was in actual possession of the Walther pistol on numerous occasions as attested to by Ms. Campbell and evidenced by the recovery of the Walther pistol from his vehicle on October 18, 2021. Alternatively, the Court finds Defendant was in constructive possession of the Springfield Armory rifle based on his representations to Officer Slater that Ms. Saine could hand over "his" AR-15 rifle.

The Court further finds by a preponderance of the evidence that Defendant possessed the Walther PK .380 caliber pistol in relation to a crime of violence based on Ms. Campbell's written statement indicating that Defendant threatened to shoot people with the Walther handgun while they were living together. The Court also finds that Defendant possessed the Walther handgun in connection with a controlled substance offense based on the sum of: (1) Ms. Campbell's representations that Defendant sold drugs out of their hotel room where he possessed the Walther handgun, and her statement that Defendant specifically possessed methamphetamine and heroin on October 18, 2021, prior to his arrest; (2) the empty plastic baggies, smoking paraphernalia, ledger, and cell phone located alongside the Walther handgun in Defendant's vehicle on October 18, 2021; and (3) the methamphetamine located in Defendant's room at the Comfort Inn in Kingsport, Tennessee, on October 18, 2021.

Defendant claims in his objections that Ms. Campbell is not trustworthy, but the Court had an opportunity to evaluate Ms. Campbell's truthfulness firsthand during trial. Although Ms. Campbell was not permitted to testify about any threats Defendant made to the safety of others with the Walther handgun or to testify about any drug-related activity due to the bifurcated nature of the trial, the Court found her to be credible. The Court does not find the slight shift in her timeline of events between her written statement to her testimony at trial to signify dishonesty or

unreliability given the length of time that had passed between trial and the events she was recollecting. Significantly, Defendant has not introduced or produced any evidence to contradict the facts set forth within the PSR, as the Court reiterates is his burden. The Court therefore finds that Defendant's base offense level is 34 pursuant to USSG §§4B1.4(b)(3)(A), and his criminal history category is VI pursuant to USSG §§4B1.4(c)(2). Objections Two, Three, Four, Six, and Thirteen are **OVERRULED**.

### iii. Possessing a Firearm in Connection with Another Felony Offense (Objection Seven)

As explained above, Defendant's guidelines range is determined by his status as an Armed Career Criminal who possessed a firearm in connection with both a crime of violence and a controlled substance offense. Defendant makes a non-determinative objection to the Probation Office's application of a four-level enhancement under USSG 2K2.1(b)(6)(B) in paragraph 45 when calculating his superseded, adjusted offense level of 32 under USSG Chapters Two and Three. [Doc. 243, at 13]. The Court need not resolve this Objection, as it does not affect Defendant's guidelines range, but of an abundance of caution, the Court will resolve this Objection on its merits.

United States Sentencing Guideline § 2K2.1(b)(6)(B) states: "If the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." "Another felony offense," for purposes of Subsection (b)(6)(B), means any federal, state, or local offense punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained. *Id.* § 2K2.1 cmt. N. 14(C). The commentary to the Guidelines further states that this subsection applies "if the firearm or ammunition facilitated, or

had the potential of facilitating, another felony offense, respectively." *Id.* § 2K2.1 cmt. N. 14(A). Further, the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug manufacturing materials, or drug paraphernalia." *Id.* § 2K2.1 cmt. N. 14(B). However, "'[c]oincidental possession of a firearm during an offense will not suffice' to apply this enhancement. '[T]here must be (and thus the Government must prove by a preponderance of the evidence) "a clear connection between the gun that served as the basis for the conviction for felon in possession of a firearm and the gun possessed during the other offense that triggers the enhancement."'" *United States v. Dexter*, No. 20-6269, 2022 U.S. App. LEXIS 3135, at *7 (6th Cir. Feb. 1, 2022) (citations omitted).

Defendant denies "that he pointed the subject Walther PK380 at anyone" and that "the referenced drugs/paraphernalia belonged to him or that he had knowledge of the same." [Doc. 245, at 2]. As explained above, Defendant's bare denials without providing actual evidence are insufficient to contest the facts contained in the PSR, and therefore the Court is entitled to rely on the facts of this case as set forth within the PSR. Based on these facts, the Court finds by a preponderance of the evidence that on October 18, 2021, Defendant possessed the Walther handgun in connection with another felony offense, because the Walther handgun facilitated or had the potential of facilitating the distribution of methamphetamine. Accordingly, Defendant's objection to the Probation Office's application of a four-level enhancement under USSG 2K2.1(b)(6)(B) is **OVERRULED**. Defendant's adjusted base offense level under Chapters Two and Three is 32 and was correctly calculated by the Probation Office. However, as discussed above, this offense level is superseded by Defendant's higher offense level as an Armed Career Criminal. Defendant's correct total offense level is 34.

### b. Objections With No Effect on the Guidelines Range

The remainder of Defendant's Objections are factual in nature and do not impact his guidelines range. The additional information provided in two of these objections, Objections Eighteen and Twenty-Six, was not contested by the Probation Office but rather provided to the Court by way of the PSR addendum. To the extent these Objections provide additional information, they are **SUSTAINED**. However, the remainder of Defendant's factual Objections (namely, Objections Nine, Ten, Twelve, Fourteen, Fifteen, Sixteen, Seventeen, Nineteen, Twenty, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, and Twenty-Five) are **OVERRULED,** because the Objections are bare, unsupported denials of facts within the PSR. The objected-to facts as described in the PSR are supported by documented sources such as affidavits of complaint, indictments, police incident reports, probation violation documents, and records from both the Tennessee Department of Correction and the Bureau of Prisons. [Doc. 252, at 5–8]. Defendant has provided no evidence to contradict any of these written sources, as is his burden, and so his remaining factual Objections must be overruled.

### III. CONCLUSION

Defendant's Objections Eighteen and Twenty-Six are **SUSTAINED** to the extent those Objections provide additional information to the Court. All other Objections lodged by Defendant are **OVERRULED**. Defendant's sentencing will proceed as scheduled on **June 24, 2024, at 3:00 p.m.**

So ordered.

ENTER:

                                                                  s/J. RONNIE GREER
                                           UNITED STATES DISTRICT JUDGE